CASE 112—CONTESTED ELECTION—DECEMBER 2.

# Banks v. Sergent.

APPEAL FROM LETCHER CIRCUIT COURT.

104  843
e107  450
d107  463

104  843
j112   31
j112   49
 112   64

104  843
114  227
114  230
114  326

104  843
123  810
123  812

104  843
125  776
125  778

1. ELECTIONS—AMENDMENT OF NOTICE OF CONTEST.—Within the ten days allowed by law to give notice of contest for the office of sheriff, the contestant may amend his notice of contest by stating as many grounds of contest as he desires and on the meeting of the Board of Contest may rely upon such of the grounds stated in the notices as he elects.

2. SAME.—After the ten days allowed for notice of contest, no additional notice can be filed.

3. SAME—CONTESTED BALLOTS NOT ACCOMPANIED BY A CERTIFICATE. —Contested ballots can not be used as evidence of any fact unless they are accompanied by a certificate upon a separate paper attached to the ballot signed by all the officers of the election showing whether said ballots were counted in whole or in part and if counted, for whom.

4. SAME—IRREGULARITIES OF OFFICERS OF ELECTION.—Where it appears that the central idea of the secret ballot is disregarded in a precinct by marking ballots in the presence of the voter and of the officers of the election, by permitting inspectors and challengers to enter the booths with the voter, and by permitting persons on the outside to communicate with the voter during the election, the entire vote of the precinct should be rejected.

5. SAME—HOURS OF ELECTION MANDATORY.—The provision of the election law regarding closing of polls at four o'clock is mandatory and where enough votes are shown to have been received after that hour to have changed the result of the election at that precinct, it is proper to reject the entire vote of the precinct.

W. S. PRYOR FOR APPELLANT.

1. The vote of the Whitesburg precinct should be rejected because enough votes were cast after 4 o'clock to affect the result. Varney v. Justice, 86 Ky., 596; Ky. Stats., sec. 1469.

2. Appellant shquld be credited by ten votes in precinct' No. 2, of which the testimony shows he was unjustly deprived. Houston v. Steele, 98 Ky., 596.

J. J. C. BACH ALSO FOR APPELLANT.

1. The law fixing the hours between which election shall be held is mandatory. McCrary on Elections, secs. 161-2-3; Varney v. Justice, 86 Ky., 596.

2. Where the deviation from the statutory hours is great, or even considerable, the presumption is that it has affected the result. McCrary on Elections.

3. The contestee as well as the contestant is restricted to the ground set up in his counter notice. Cowan v. Prowse, 93 Ky., 156; Wilson v. Hines, 99 Ky., 221; 18 Ky. Law Rep., 233.

4. A ballot stenciled under the Democratic device and in the square opposite the name of a candidate in the Republican column should be counted for that candidate. Houston, County Judge v. Steele, 98 Ky., 596.

WM. H. HOLT FOR APPELLEE.

1. The vote of the Whitesburg precinct should not be rejected on account of votes received after 4 o'clock because it does not appear for whom those votes were cast.

2. Appellant is not entitled to eighty-seven votes instead of seventy-five in precinct "I" because this claim was not set up in the notice but in the amended notice. Ky. Stats., sec. 1535; Wilson v. Hines, 99 Ky., 221; 18 Ky. Law Rep., 233. It further appears that the certificate under which that vote was claimed was a "doctored" one.

3. The object of an election is not to benefit candidates but to ascertain the public will, to have a fair expression of it, and unless irregularities by the officers of election affect this, they are to be disregarded.

4. If a given end be accomplished and the real merits not affected by the non-compliance, then the statute is directory only. Anderson v. Winfree, 85 Ky., 597; McCrary on Elections, sec. 126; Ky. Stats., sec. 400. The case of Varney v. Justice, 86 Ky., 596, is unlike this case. The argument of that case supports the contention of the appellee. It draws the distinction very clearly between the constitutional and the statutory provision. Constitution, 1850, art. 8, sec. 16; present Constitution, sec. 148.

Banks v. Sergent.

S. B. DISHMAN, ALSO FOR APPELLEE.

1. Appellee claims that appellant abandoned his original notice of contest and therefore abandoned his contest.

2. That he, the appellee, received a majority of the legal votes cast at said election and was rightfully declared elected.

3. That the election held at precinct No. 5 was not held under the secret ballot system and is void.

4. That at precinct No. 5, 75 per cent. of the ballots counted for appellant were irregular, having been stenciled by the clerk of said election, the voters not being disqualified by reason of physical inability to stencil their own ballots, that by reason thereof contestant received not exceeding 33 per cent. of the legal votes, if any votes, at said precinct. That only 25 per cent. counted for contestee at said precinct were stenciled by the clerk and his legal vote at said precinct was thirty-one legal votes.

 Citations: Ky. Stats., sec. 1535; Cowan v. Prowse, 93 Ky., 156; Wilson v. Hines, 99 Ky., 221; 18 Ky. Law Rep., 233; Varney v. Justice, 86 Ky., 599; Major v. Barker, 18 Ky. Law Rep., 106; Ky Stats., sec. 1475; Constitution, sec. 147.

W. S. PRYOR, IN REPLY.

1. If the contestant's notices of contest were inconsistent with each other, the contestee should either have demurred specially or should have pleaded one in bar of the other. Civ. Code, sec. 92, sub-sec., 3; Same, 118; Gist v. Shun, 8 Ky. Law Rep., 509; Frogg's Exr. v. Long's Admr., 3 Dana, 157. And a failure to raise such objection by demurrer or plea is a waiver.

2. The contestee having given counter notice of contest was restricted by the allegations made in it. Gossom v, Badgett, 6 Bush, 97; Boone v. Chiles, 10 Peters, 177.

JUDGE WHITE DELIVERED THE OPINION OF THE COURT.

 The appellant and appellee were opposing candidates for the office of sheriff of Letcher county at the regular election in November, 1897. On the face of the returns the appellee received five hundred and five votes and appellant four hundred and sixty-nine votes. The comparing board gave the certificate of election to the appellee. Thereupon

and within ten days, the appellant gave notice of contest. The appellee gave a counter notice of contest, and upon this notice and counter notice proof was taken, and the contest heard and determined by the county board, composed of the county judge and two justices. The judgment of this board was for contestee, Sergent. The case was appealed to the circuit court, and the same judgment was rendered, and from that judgment this appeal is taken.

The notice of contest given by appellant seeks to have election returns from precinct No. 1 of Letcher county disregarded because of the fact, among others, that the polls were not closed at 4 p. m., the hour fixed by law, but that more than one hundred votes were permitted to be cast at that precinct after 4 o'clock p. m. The returns of precinct No. 6 are sought to be disregarded for the same reason—that from twenty-five to fifty votes were permitted to be cast at that precinct too late, and because fifteen illegal voters had been permitted to vote for appellee, giving names. The charge is that each of these fifteen persons had been disfranchised by the judgment of a circuit court. It is also claimed by the notice that there is an error of ten votes in precinct No. 2, in that appellant by the returns is certified as having received fifty-seven votes, when as a fact he received sixty-seven votes. This notice also complains of the action of the election officers in precinct No. 5 in refusing to count certain ballots returned with the certificate, and appellant seeks to have these counted. There are other grounds of objection to precinct No. 1—of fraud on the part of the election officers, in that they changed and falsified the result at that precinct as actually cast, by deducting from appellant's number twelve votes; the certificate being that he received seventy-five votes, when it is alleged that he received

eighty-seven votes.   The appellee gave a counter notice, in which it is alleged that the fifteen illegal voters who were named by appellant as voting at precinct No. 6 voted for appellant, and should be purged.   The counter notice admits the alleged error in precinct No. 2 of ten votes. Appellee charges that in precinct No. 5 there was no attempt to hold the election under the secret ballot law, but that the ballots were marked by the clerk on the table, in plain view of the other election officers, without any disability of the voter being shown, and in the presence of the voters there permitted to be assembled.   On these charges and counter charges, as well as that in each of these precincts the officers of election used whisky on the day of the election, and separated, and votes were received by some of the officers in the absence of the other officers, much proof was taken by deposition, and the original ballots and returns are brought here.   From the proof here it appears that three hundred and sixty-one votes were polled at precinct No. 1.   Of this number, appellant, by the returns, received seventy-five, appellee received one hundred and twenty-one, and another candidate sixty-seven. In precinct No. 5, appellant received, by the returns, one hundred and thirty-one votes, appellee forty-one votes, and the other candidate thirteen; there being two hundred and thirty votes cast at that precinct.   In No. 6, by the. returns, appellant received fifty-three votes and appellee sixty-three, the other candidate receiving nine votes; there being one hundred and fifty-three votes cast at that precinct.   The vote in the other three precincts is not questioned, except the error in ten votes claimed by appellant in No. 2, which in the counter notice given by appellee is practically conceded.

It is contended by appellee that appellant must fail in

this proceeding for the reason that the original notice of contest, which was given on the 6th day of November, was abandoned, and this proceeding is had under a subsequent notice, given on the 12th; appellee contending that a party contestant is bound by the first notice given, and that it could not be changed or amended, or additional grounds set up, in a subsequent notice. We do not assent to this proposition. We are of opinion that, within the time allowed by law to give notice of contest, a person may give notices additional and amendatory, or abandon the first and give others. He may give as many notices of grounds of contest as he desires, provided he does so within the limit of time allowed, and on the meeting of the board of contest, he may file any one or all of the notices given, and rely on any or all grounds set out in either of the notices given.

After the board of contest had assembled and were sworn, the appellant offered to file additional grounds of contest, and the board refused to permit same to be filed, or to consider them, because they were not in the notices given within the ten days allowed by law. This action is assigned by appellant as error, as the amendment was again offered in the circuit court with a like result, the court refusing to permit same to be filed. This question has been passed on by this court at this term in the contested election case of Anderson v. Likens, 20 Ky. Law Rep., 1001 [47 S. W., 867]. In that case it was expressly held that, after the limit fixed by law for giving notice of contest, an amendment or additional grounds of contest could not be filed. To that opinion we adhere.

Appellant complains of the action of the contesting board and the circuit court because they refused to count certain ballots returned from precinct No. 5. The orig-

Banks v. Sergent.

inals of these ballots  are here, and are indorsed: "This
ticket was counted for all persons under the rooster, and
no one else.  H. Banks, Clerk Election Precinct No. 5."
This exact indorsement is not on all the ballots, but they
are similar.   On inspection of the ballot, the cross is oppo-
site appellant's name, which is under the "Log Cabin," and
appellant contends that the votes so marked should be
counted for him.  The opinion in Anderson v. Likens,
*supra*, also is conclusive of this point.  The certificate of
the clerk of election alone amounts to no certificate.  In
any event, the certificate should not be on the ballot.  It
should be on a separate paper, attached to  the ballot, and
signed by all the officers of the election.  The ballots so
certified can not be used as evidence of any fact, and they
should not have been counted by the contesting board.

It is contended by appellant that voting precinct No. 1
should be disregarded, and the returns therefrom not
counted for any person for the reason of the almost total
failure to comply with any provision of the election law.
The same contention is made as to precinct No. 6.  On the
other hand, appellee contends that the returns from pre-
cinct No. 5 should be disregarded, and not counted for
any person, because of misconduct of the officers of elec-
tion, and an almost utter failure to comply with the elec-
tion law as to the secret ballot, and in canvassing
and  certifying  returns.   From  the  proof  before
us it appears that in precincts Nos. 1 and 6 the polls were
kept open till after 4 o'clock p. m.   At precinct No. 1 more
than one hundred votes were received after 4 o'clock p. m.
and at precinct No. 6 fully thirty votes were received after
4 o'clock p. m.  We are  of opinion that the provision of
the election law requiring the polls to close at 4 p. m. is

[ 54 ]

mandatory, and not merely directory, and in any case where it is shown votes have been received at any precinct after 4 p. m. sufficient to affect the result, that that precinct should be disregarded, as there is no way to identify the tickets, if not destroyed, nor any power or way to ascertain how these illegal votes were cast, and consequently it is impossible to disregard these votes only, by deducting them from the party for whom they were cast, where it is clearly shown the polls were not closed at 4 o'clock. However, it appears that at precinct No. 1 the officers of election had whisky in the voting room, and used it themselves on that day, and permitted persons—an election officer or inspector or challenger, as the case might be—in many instance to accompany the voter into the booth where he stenciled his ballot, and permitted persons other than voters in the room or to remain in the room during election hours as well as while the canvass was had and certificates were prepared. This was all in violation of the express letter, as well as the spirit, of the law. In precinct No. 6 it is admitted, by both appellant and appellee, that fifteen persons who had been disfranchised were permitted to vote, and the ballot stubs show that most of these voted early, and within the election hours. These fifteen, with the thirty who voted after 4 o'clock, would make nearly half of the vote at No. 6 precinct illegal. These illegal votes were all cast when the judges of the election knew they were illegal. In precinct No. 5 it is not clear at what hour the polls closed, but we will assume that they were closed at the right time. It is shown that at precinct No. 5 fully seventy-five persons had their ballots marked on the table by some officer of the election, without any disability being shown and without swearing the voter. The proof shows that the method adopted at

Banks v. Sergent.

this precinct was, the voter would be furnished with a card or slip of paper by some party on the outside before he went in to vote, and on the card were written the names of the parties he desired to vote for, and when the voter went in to vote he would present this card, and one of the election officers would read it aloud, while another officer, usually the clerk, would mark the ballot, and it was then deposited in the box. Again, it is shown that at this precinct the booths were placed near a window, with the window lights out, and large cracks in the house, it being a log house; that, when the voter went into the booth to vote (such as did go in) it could be seen by the persons outside how he marked his ballot; and it is shown that on one occasion a candidate stood at the window, and asked the voter to "remember me." (This candidate was not for sheriff.) Further, it is shown that, when the count of the votes was in progress, two of the officers—the clerk and another—did the counting, and at least one other officer sweetly slept. This precinct gave appellant ninety majority. It seems to us that at precinct No. 5 the officers of election wholly failed to hold the election under the law. It was in no sense a secret ballot. The secrecy of the ballot is the fundamental idea of all elections, and this is required by the Constitution as well as by statute. This central idea being disregarded in this precinct, and a practical *vira voce* election held, as the proof shows, we are of opinion that the returns therefrom should be disregarded.

It is insisted, however, that the counter notice given by contestee is insufficient to bring before the court these irregularities in No. 5, and that, therefore, they can not be considered. Without deciding whether a counter notice of contest is necessary, and without even intimating an

opinion thereon, we conclude that the counter notice given by appellee is sufficient to bring those matters before us.

Disregarding these three precincts (Nos. 1, 5, and 6), and also counting for the contestant, Banks, the ten votes in precinct No. 2, the result is not different from that certified by the county canvassing board. It results in the election of appellee, Sergent. The judgment of the circuit court, resulting the same way, is affirmed.