CASE 104—CONTESTED ELECTION—JUNE 13.

# Tunks v. Vincent.

### APPEAL FROM EDMONSON CIRCUIT COURT.

106 829
j112 38

106 829
e114 327
114 462

106 829
125 778
e127 168

1. ELECTIONS—CONTEST—NOTICE.—A notice of contest in the absence of a motion to make same more specific can not be held to be insufficient in failing to state that the contestant was eligible to the office he was contesting.

2. SAME.—Nor can such notice be held to be insufficient in failing to specify the names of the voters whose votes were challenged as illegal, or those who were charged to have been permitted to vote improperly.

3. SAME—OFFICER'S RETURN IN BLANK.—The court will not undertake to reject a precinct because the officer's return is blank as to the names of the candidates receiving the votes at that precinct for the office in contest where the return shows the number of votes cast for each party and there was but one candidate for each party for that office at that election.

4. SAME—EFFECT OF DECISION OF THE CONTEST BOARD ON ILLEGAL VOTES.—The decision of the contest board as to the legality or illegality of the vote cast is not final, but is subject to revision by the courts.

5. SAME—DECISION OF THE LOWER COURT ON QUESTIONS OF FACT. —The decision of the lower court upon the legality or illegality of a vote as depending upon a question of fact will not be disturbed without good reason, and where it appears that a vote is illegal it will be rejected whether the ballot was deposited in the ballot-box or not.

6. SAME—EVIDENCE.—Testimony that a voter was a Republican is competent as a circumstance bearing upon the question as to how he voted.

7. SAME.—A voter is a competent witness to prove how he voted and he may be compelled to testify as to how he voted unless he decline upon the ground that such testimony would incriminate him.

8. SAME.—The statements of a voter as to how he voted, detailed by another, are incompetent, being mere hearsay.

SIMS & COVINGTON, MITCHELL & DuBOSE, EDWARD W. HINES
FOR APPELLANTS.

1. The notice of contest is insufficient, in that it fails to allege that the contestant is eligible, nor does it state that contestant is a

legal voter of the county. Another ground complained of is that the notice fails to specify the names of voters claimed to be illegal.

2. The election returns on their face show that appellant received a majority of the legal votes cast at this election, and there is no proof to overturn this *prima facie* case. The return from the Parker precinct is void, so far as this contest is concerned.

3. The election officers in the Brownsville precinct failed to count for appellant one ballot he was clearly entitled to under the law, but said officers illegally destroyed said ballot without counting it for any one, and the judgment of the circuit court, did not correct this error.

4. The election officers of the Bee Springs precinct counted for appellee five votes which he was not entitled to. Three of said votes having been cast alone for S. J. Shackelford, for clerk of the court of appeals, and two of said ballots having been cast alone for W. E. Settle, for circuit judge, but all counted for appellee, and said ballots were destroyed by the election officers; and their action in this was confirmed by the judgment appealed from.

5. The circuit court improperly and illegally deducted two votes from the number of appellant's votes, one cast at Bee Springs precinct, and one at Capital Hill precinct, upon the ground that said votes were cast by illegal voters, to-wit, Jesse Crowley and Dick Dunn.

6. That the circuit court heard and received incompetent testimony, in this, that it allowed and received in evidence the alleged declarations of Jesse Crowley and Dick Dunn, of how they intended to and how they had voted. Also permitted Warren Strong, an officer of the eletion to testify concerning the marks on the ballot of Dick Dunn.

7. That the court erred in its manner of deducting alleged illegal votes from the votes cast in the election.

J S. LAY FOR THE APPELLEE.

Counsel discussed mainly the questions of fact involved in the case and upon the questions of law raised by appellant, made the following citations: 6 Am. & Eng. Ency. of Law, pp. 302, 325, 337 and note 5; 338, 351, 357, 353 and note 1; McCrary on Elections (4th ed.), secs. 483, 484, 459, 479, 486, 491, 492, 493, 494; Haywood v. Beers, N. Y. Contested Election Cases, 180; Stinson v. Sweeney, 17 Nev., 309; State v. Sillon, 24 Kas., 13; Patton v. Coates, 41 Ark., 111; New Jersey Case, 1 Bart, 19; Vallindingham v. Campbell, Id., 223; Newland v. Graham, 1 Bart, 5, note; People v. Pease, 27 N. Y., 45; State v. Olin, 23 Wis., 319; State v. Craft, 18 Ore., 550; Boyer v. Teague, 106 N. C., 576; People v. Hollihan, 29 Mich., 116; Miller v. Thompson, 29 Mich., 118;

Tunks v. Vincent.

Duffey Re., 4 Brewst., 531 Pa.; Thompson v. Ewing, 1 Brewst., 68-9; Houston, County Judge, v. Steele, 98 Ky., 596; Major v. Barker, 99 Ky., 305.

J. M. WILKINS ALSO FOR THE APPELLEE.

Discussed generally the facts and upon the same propositions of law, made the following citations: 90 Ky., 55; 95 Ky., 421; 98 Ky., 576; 99 Ky., 305; 27 N. Y. Rep., 45; McCrary on Elections (4th ed.), secs. 492, 493, 494, etc.

P. F. EDWARDS ALSO FOR THE APPELLEE.

Cited to the same points the following: McCrary on Elections, pp. 321, 322, 277, 51; Imboden v. Cully, 94 Ky., 45.

EDWARD W. HINES, JAMES C. SIMS, AND JOHN E. DuBOSE FOR APPELLANT IN A PETITION FOR A REHEARING.

Before a vote can be rejected something more is required than to throw doubt upon it. The lack of qualification of the voter, and for whom his vote was counted, must be made clear by competent and legal evidence following the usual and ordinary methods of ascertaining the truth. Com. v. Barry, 98 Ky., 394; Major v. Barker, 99 Ky., 305; Ky. Stats., sec. 1571; Newcum v. Kirtley, 13 B. M., 515; Cooley Con. Lim., p. 620.

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

Appellant and appellee were opposing candidates for the office of county court clerk of Edmonson county at the regular November election, 1897. On the face of the returns, as found by the canvassing board, appellant, Tunks, was elected by one vote, and he was accordingly given a certificate of election by that board.

Appellee, Vincent, at once gave notice of contest, to which Tunks responded by demurrer to the notice, and by specific denial of the facts alleged in the notice. He also gave a counter notice, charging various irregularities in the vote received by Vincent. After preparation and final hearing, the board of contest, by the concurrence of a majority, held as had the canvassing board, and adjudged in favor of Tunks. On appeal by Vincent the regular circuit judge

deemed himself disqualified by reason of having been a candidate at the same election, and an agreement was made by which the case was heard and determined by a special judge, the Honorable C. U. McElroy, who, in an able and elaborate opinion, held that Vincent was entitled to the office.

The first question to present itself is that raised by the demurrer. The notice is said to be insufficient (1) because it does not state that Vincent was eligible to the office he was contesting; and (2) because it is indefinite, and fails to specify the grounds relied on. It was held by the learned judge below that the notice was indefinite, but, in the absence of a motion to make more specific, it should be held sufficient. The notice is to the effect that Tunks, who is averred to be the Republican candidate for the office, whilst the contestant, Vincent, was the Democratic candidate for the same office, did not receive, but that Vincent did receive, a majority of the legal votes cast in the county of Edmonson at the election of November 2, 1897, and that, receiving such majority, he (Vincent) was duly and legally elected clerk of the Edmonson county court. Before passing to a consideration of other terms of the notice, we may say here that we regard the foregoing specifications of the notice as substantially meeting the objections first above indicated.

In Ledbetter v. Hall, 62 Mo., 423, it was said that, even if it was necessary to allege eligibility, the statement in the notice that the contestant has been duly and legally elected to the office in controversy, necessarily implied his eligibility for the official position. This is substantially the effect of the decision of this court in Collopy v. Cloherty, 95 Ky., 330, [25 S. W., 497.] (See cases to same effect in 7 Enc. Pl. & Prac., 381, notes 5, 6.)

Tunks v. Vincent.

We are to bear in mind also that the statement that contestant was a candidate of one of the political parties has force in view of our election laws providing for party nominations. When one is such a candidate, he must be presumed to be entitled to have his name go on the official ballot and is *prima facie* eligible to the office for which he is a candidate. The mere averment of his candidacy under these circumstances implies eligibility. Edwards v. Knight, 8 Ohio, 375; Batterton v. Fuller (S. D., 1894), [60 N. W., 1071.]

Continuing, the notice charged that the precinct officers of the election permitted divers illegal votes to be cast for Tunks and against Vincent as follows: Twenty-five at Parker precinct, twenty at the Capital Hill precinct, etc., and that at the Fork and Bee Spring precincts especially the officers illegally counted to Tunks and against Vincent about ten votes that did not vote for either Tunks or Vincent; that the officers refused to allow about ten legal voters to vote who would have voted for Vincent had they been allowed to vote; and that Vincent had lost six votes at the Fork and Parker precincts because the officers there refused to count for him all the legal votes cast for him at those precincts.

Our statute provides that "the notice shall state the grounds of the contest, and none other shall afterwards be heard as coming from such party." Kentucky Statutes section 1535, subsection 1.

We are of opinion that the notice in question does state the grounds of the contest within the meaning of the statute. The object of the notice is, of course, to put the contestee upon a proper defense, and prevent any surprise being practiced upon him; and, whilst it would have been

[ 53 ]

incumbent on the contestant, at the time he gave his notice, to give the names of illegal voters if he knew them, he was not asked to make his notice more specific.

In discussing the sufficiency of such notice under a Federal law which required that the contestant should, within thirty days after the election, "give notice in writing to the member whose seat he intends to contest, and in such notice shall specify particularly the grounds on which he relies." Judge McCrary, in his work on Elections (section 394), says: "It seems to be settled by the decisions of the House of Representatives that a notice is good under the law if it specify the number of illegal votes polled, for whom polled, and when and where polled, without specifying the names of the illegal voters." And the learned author, continuing, says, "The same rule prevails in cases brought under statutes providing for the contest of elections;" citing the cases of Gibbon v. Sheppard, 65 Pa. St., 36; Batturns v. Megary, 1 Brewst. 162; Doerslinger v. Hilmantel, 21 Wis., 574.

The statute requires the grounds merely of the contest, and not the evidence in support thereof. And so we may say, in this connection, that, although we find much in the record and in the argument for contestant in support of the rejection of certain alleged illegal ballots counted for contestee, there is nothing in the notice apprising appellee of such a ground of contest. We think the demurrer to the notice was properly overruled.

Disposing of Tunks' counter notice first, and which does rely on defective ballots and returns as well, it appears that at the Parker precinct the officers made out their return in the usual form, except they failed to fill in the blanks provided for the names of the various candi-

dates; that is, the returns were made saying that the candidate for county judge, candidate for county clerk, and the various other candidates voted for received the number of votes certified to and set opposite their names; but the names of the various candidates were not given. It is therefore insisted for Tunks that that precinct be excluded entirely. The trial court, as to this, said: "As there was only one Republican candidate and one Democratic candidate for county clerk and county judge, I take it there can be no reasonable doubt about the fact that the ninety-eight votes returned for the Republican candidate for judge and the Republican candidate for clerk, respectively, and the 182 votes returned, respectively, for the Democratic candidates for county judge and county clerk, were intended for Dorsey and Tunks, and for Edwards and Vincent, and I am unwilling, therefore, to throw that precinct out."

We think this conclusion is sound, and is supported by ample authority. 10 Am. & Eng. Enc. Law, 732 and notes.

The trial court reached its conclusion that Vincent was elected by holding that out of thirty-four Tunks votes attacked by Vincent two of them were illegal votes, because the voters were not qualified electors under our statute. This elected Vincent by one vote, and left the Republican candidate for county judge, whose election was contested by his opponent, elected by three votes, instead of five, as found by the canvassing board. The latter contest was heard on the same proof and record, but from this finding there is no appeal.

It is insisted for appellant, at the threshold, that under our election system there can be no inquiry as to the casting of illegal votes, because the action of the precinct officers is final. We can not think so. The question in

all election cases is, which candidate has received the
highest number of legal votes; and, except so far as the
investigations of judicial tribunals on his behalf is re-
stricted by positive mandate, the usual and ordinary
methods of ascertaining the truth should be followed;
and, where it can be done, every illegal vote should be
thrown out. The two votes rejected by the lower court
were those of Dick Dunn and Jesse Crawley. The proof
as to the legality of each of these votes is conflicting, and
we find no good reason for disturbing the findings of fact
as certified by the trial judge. The preponderance of the
proof is that Dunn was not a resident of the precinct
when he voted, and, if Crawley was,—which is doubtful,
—it is clear he was under twenty-one years of age at that
time. A more difficult question is presented when we
see to ascertain for whom Crawley voted. As to Dunn,
there is no difficulty. His vote was challenged, and, whilst
he was permitted to vote, his ballot was not put in the
ballot box. It was preserved until the close of the elec-
tion, and then counted for Tunks. The testimony as to
this is uncontradicted, and we think it is competent.
Dunn was an illegal voter, and the law as to the secrecy
of the ballot can not be invoked to protect his ballot. As
aptly held by the learned judge below, an illegal vote is
no vote, and if it gets in the poll books and in the returns,
it should be stricken out whenever it can be ascertained by
sufficient and competent evidence; and it should be taken
from the candidate who received it whenever that fact
can be made clearly to appear by competent and legal
evidence. As Dunn was an illegal voter, the uncontra-
dicted testimony as to how he voted is competent, and his
vote was therefore deducted from Tunks' total vote. We
have seen that Crawley was an illegal voter, but when we

come to ascertain how he voted an interesting question is presented. He was introduced as a witness for Tunks, and testified on cross-examination that he was a Republican, this being his first vote. When asked for whom he voted, he expressed a willingness to answer, but counsel for Tunks objected, and told him not to answer. He then declined to answer. It was shown by other testimony, the competency of which challenged, that he said before he voted that he intended to vote the Republican ticket except in one particular, not important here, and, after the election, that he had so voted. Several witnesses so prove, and Crawley in no way contradicts their statements.

We regard the proof that the witness was a Republican as competent testimony, and, further, that he was himself a competent witness to prove how he voted, and might be compelled to testify as to how he voted, unless, indeed, he declined upon the ground that such testimony would incriminate himself. Judge Mc-Crary, in his work on Elections (3d Ed., sections 457-459), very clearly lays down this rule as supported by the authorities. He concluded by saying: "It is very clear that the rule which, upon grounds of public policy, protects the legal voter against being compelled to disclose for whom he voted, does not protect a person who has voted illegally from making such disclosure. To give to that rule this wide scope, would be to make it shield the right and the wrong, the honest and the dishonest." The witness offered to answer the question as to how he voted, and was prevented only by the objection of Tunks; and this, in connection with the proof that he was a Republican, would seem to afford *prima facie* grounds for concluding that he voted for Tunks. Mr. McCrary, in sec-

tion 458, says: "And when a voter refuses to disclose or fails to remember for whom he voted, it is competent to resort to circumstantial evidence to raise a presumption in regard to that fact," citing People v. Pease, 27 N. Y., 45, [84 Am. Dec., 242], and Cushing's Am. Parl. Law, sections 199, 210; and the same author says it is also competent to prove that the alleged voter was an active member of a particular political party, or obtained his ballot from a person supporting a particular candidate or ticket. We are not inclined to follow what may be conceded to be the rule approved by a preponderance of authority, to the effect that Crawley's declarations as to how he voted are competent. We think these statements are mere hearsay. As we have seen, however, there is enough testimony to show that this vote was an illegal one, and that Tunks got the benefit of it, and the trial court committed no error in subtracting it from appellant's vote. It is not necessary to review the action of the court in declining to reject other alleged illegal votes said to have been counted for appellant.

The judgment is affirmed.

JUDGES GUFFY AND DuRELLE DISSENT.