## Salisbury et al. v. Moore et al.

(Decided March 23, 1934.)

WILL H. LAYNE for appellants.

HILL & HOBSON and W. C. NOBLE for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal involves the right of the parties, in the two equity contest actions filed in the Floyd circuit court on July 12, 1933, the one by Polly Martin v. Julia Salisbury, J. W. Lykins, and Sallie Moore, the other by Sallie Moore v. Julia Salisbury, J. W. Lykins, and Polly Martin, to two of the three offices of subdistrict trustee in the rural school subdistrict No. 79, Floyd county, Ky.

The plaintiffs in the suits, Polly Martin and Sallie Moore, were allied or friendly candidates, as were also the defendants, Julia Salisbury and J. W. Lykins, who opposed them. The cases were ordered consolidated and heard together, under the style of Sallie Moore et al., Plaintiffs, v. Julia Salisbury et al., Defendants, and they will be here so considered and disposed of in one opinion.

At the July, 1933, election, held in this school subdistrict No. 79, two trustees were to be elected, and, upon a canvass of the votes cast therein for these candidates, the officers holding the school election certified that the appellants, Julia Salisbury and J. W. Lykins (contestees below), had received 74 votes each, and the appellees, Polly Martin and Sallie Moore (contestants below), 69 votes each. Thereupon the two suits contesting the appellants' election were filed, in which they attacked the legality of 9 votes cast and counted for appellants, or for either of them, and further charged each of them with violating the provisions of the Corrupt Practice Act of Kentucky.

The names of the persons who were charged with voting illegally and the grounds on which the charge

was based, as set out in plaintiffs' petition, are as follows:

Elmer Castle—under age of 21 years
Hilbert Mullins—under age of 21 years
Tom Ramey—nonresident of the district
Jennie Handshaw—nonresident of the district
Jack Lyons—nonresident of the district
E. C. Atwell—nonresident of the district
Tom Lyons—nonresident of the district
Tom Skeens—nonresident of the district
Tilden Collins—convicted of felony

The contestees by answer and grounds of counter contest attacked the legality of 9 of the votes cast for contestants, which they sought to have stricken from the 69 votes certified to have been received by them, and which they alleged had been, upon the grounds stated, illegally cast and counted for them by the following named persons:

Stella Martin—under age of 21 years
Elnora Mullins—under age of 21 years
Velva Yonts Salisbury—under age of 21 years
William Johnson—nonresident of the district
Steve Evans—nonresident of the district
Mary Evans—nonresident of the district
Gomer Moore—convicted of a felony
Bettle (Vestle) Moore—convicted of a felony
John Pennington—bribery

By agreement the affirmative allegations contained in the joint and separate answers of Julia Salisbury and J. W. Lykins and the grounds of counter contest were controverted of record.

Much testimony was taken, after which, upon final submission of the case upon the pleadings, evidence, and exhibits, it was adjudged that, of the vote cast for appellants, the 7 of them cast by Elmer Castle, Tom Ramey, Tom Lyons, E. C. Atwell, Tom Skeens, Jennie Handshaw, and Hilbert Mullins were illegal and should be deducted from the total of the 74 votes received by the appellants, leaving them 67 votes each, and that each of the plaintiffs received 69 votes and were duly elected as trustees in school subdistrict No. 79 at the election held July 1, 1933, and, being thus adjudged to have received a majority of the legal votes cast in said election, they were entitled to certificates of election to the two offices of subdistrict trustees in said district

and it was further ordered that the certificates of election awarded the defendants, Julia Salisbury and J. W. Lykins, be vacated, set aside, and held for naught.

The ground of contest and counter contest herein relied upon involved the charged illegality of these recited votes, which were alleged to have been cast and counted equally, or 9 each alike for appellants and appellees. Of these 18 illegal votes, 9 were attacked upon the ground that the voters casting them had not, prior to the election, in good faith resided in the state, county, and precinct for the time required to become lawful electors in said precinct No. 79; 5 others of the attacked 18 votes are objected to on the ground that, while it is admitted that an infant cannot lawfully vote at a general election, yet none the less the five named persons did illegally vote at this election (two for contestant and three for contestee) when they were then under twenty-one years of age. Also that 3 others of the alleged illegal 18 votes were charged to have been cast by persons who had been convicted of a felony, without showing that their disfranchisement therefor had been removed prior to the election. The last one of these contested 18 votes allegedly cast for contestant was objected to as illegal upon the ground of bribery of the voter casting it.

The legal principles which have been repeatedly announced as applicable for the determination of these questions here raised as to the legality of this contested vote are now so generally understood as established and well settled, through their frequent reiteration, we do not deem a further citation or dicussion of them is here called for. Appellants and appellees alike have cited and quoted in their briefs, without dispute or difference of opinion, as to what are these controlling legal principles, though strongly differing in their claims as to what we should conclude are to be taken as the facts established by the very large amount of conflicting testimony taken by them, to which these conceded controlling rules applied.

We have carefully read the several volumes of this proof, but do not deem it either timely or here helpful to unduly extend this opinion by entering upon its detailed recital, as deposed seriatim by the many witnesses, but conclude it is here sufficient to say that our analysis and appraisement of this mass of very conflicting evidence heard and weighed by the chancellor quite

amply sustains his finding of fact that 7 of the 9 votes charged to have been illegally cast for appellants (contestees below) were illegal, and for such reason should be deducted from the total vote of 74 received by them, and that one of the 9 votes cast for appellees, to which counter objection was made by appellants as unlawfully cast, was in fact illegal (as is admitted by brief of appellees), and that it should also be deducted from their total of 69 votes received, leaving the adjudged result of 68 legal votes received by appellees, or a majority of one vote over the legal votes cast and counted for appellants.

Also do we conclude that the evidence introduced by the appellees (contestants below), in support of their ground of contest charging the appellants with violation of the Corrupt Practice Act (Ky. Stats. sec. 1565b-1 et seq.), was amply sufficient in its cogency and probative quality to support a finding by the chancellor that the violation of the act, as charged to have been committed by the appellants, was in fact so committed either by the appellants or by others so unlawfully acting with their knowledge and consent in furtherance of their election.

While the charge of such conduct is denied categorically by the appellants, the circumstances under which their races for these two offices were conducted by appellant J. W. Lykins (as well as by the friends and members of the families of both appellants) lead us to conclude that we can most fairly and reasonably attribute to each of them knowledge of and acquiescence in the violation of the inhibitions of section 1565b-11, Ky. Stats. (Corrupt Practice Act) by appellants' friends in their behalf.

Our review of the evidence here before us introduced in support of appellees' contention that appellants violated the provisions of this act is also such, we conclude (considered in connection with the well-established rule to the effect that the chancellor's finding will not be disturbed on appeal when the mind is left in doubt as to the truth), as leads us without hesitation to conclude that the learned chancellor's judgment so finding, whether based upon the one or both grounds, should be affirmed—both in respect to his holding that the appellees are by the evidence shown to have received a majority of the legal votes cast at the election, as well as upon the further ground that the evidence was amply

748

sufficient to establish appellants' responsibility for the conduct of those violating, in their behalf, and with their knowledge and consent, the provisions of the Corrupt Practice Act, and that they willingly accepted the benefit of the votes so secured by them.

Therefore, for the reason indicated, we conclude that the judgment of the learned chancellor should be, and it is, affirmed.