## Runyon v. Trent.

(Decided Oct. 12, 1937.)

J. E. CHILDERS and A. F. CHILDERS for appellant.

FRANCIS M. BURKE for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, B. W. Runyon, and the appellee, T. J. Trent, were candidates for the Democratic nomination for the office of county judge of Pike county at the August, 1937, primary election. The county board of

election commissioners certified 2,170 votes for the appellant and 2,121 votes for the appellee, and issued to the appellant a certificate of nomination. Thereupon the appellee instituted this contest proceeding alleging that the appellant had violated the Corrupt Practice Act (Ky. Stats. sec. 1565b-1 et seq.), and that 405 voters, whom he named in his petition, had voted openly upon the table without being sworn as required by section 1475, Kentucky Statutes. In an answer and counterclaim, the appellant traversed the allegations of the petition, and charged that appellee had violated the Corrupt Practice Act, and named 139 voters whom he alleged voted openly on the table for appellee without being sworn. Considerable proof was taken, and, upon submission of the case, the court found that 101 voters had voted openly for appellant, B. W. Runyon, and 42 voters had voted openly for the appellee, T. J. Trent, without being sworn. These votes were deducted from the totals certified by the county election commission for the respective parties, leaving appellant a total legal vote of 2,069, and the appellee a total legal vote of 2,079. It was further adjudged that the contestant, T. J. Trent, received a plurality of all the legal votes cast in the primary election for the Democratic nomination for the office of county judge. The certificate of nomination theretofore issued and delivered to the contestee, B. W. Runyon, was canceled, and the Pike county board of election commissioners was ordered and directed to issue and deliver to the contestant the certificate of nomination as Democratic nominee for the office of county judge, and the county clerk was directed to place his name upon the official ballot as such nominee.

Appellant seeks a reversal of the judgment on the following grounds: (1) The evidence of Jack Johnson and others with reference to Long Fork precinct 27 is incompetent, and should not be considered; (2) the evidence with reference to Island Creek precinct 39 was insufficient to sustain the court's finding that any illegal votes were cast in that precinct; and (3) the appellee failed to file his depositions within the time required by law.

The evidence shows that open voting was the rule rather than the exception in Long Fork precinct 27. The appellee, in his petition, named 86 voters who cast their ballots openly in that precinct without being sworn. He introduced as witnesses two officers of the election, Jack

Johnson, clerk, and Richard Burke, one of the judges. Johnson testified that he had lived in the precinct all of his life and knew all of the voters, and that a large number of voters presented a sample ballot marked for appellant and a slate of candidates and asked one of the election officers to mark their ballots accordingly. He named 68 voters who cast their ballots openly in the presence of the election officers for appellant without being sworn. Richard Burke, one of the judges of the election, testified that he had lived in the precinct all of his life and was well acquainted with the voters. He stated that a large number of voters entered the room where the election was held with a marked, sample ballot, handed it to one of the officers of the election, and asked him to mark the ballot in accordance with the sample ballot. He was not so specific in his testimony as Johnson, but named a large number of voters who voted openly for appellant without being sworn and to that extent corroborated Johnson. Considerable evidence was introduced by appellee tending to show that 10 or 12 persons named by Johnson and Burke did not vote in Long Fork precinct, but there was considerable conflict on this point. However, the judge refused to deduct from the number of votes received by appellant the vote of any person where there was any conflict in the evidence as to whether or not he voted, and, if he voted, whether or not he voted openly without being sworn. Johnson and Burke named 56 voters in Long Fork precinct who voted openly for appellant, and, as there was no proof to the contrary, the court properly deducted these votes from the total received by appellant.

It is insisted that the officers of election were not competent witnesses to prove how the votes were cast, but that the voters themselves should have been introduced. Section 147 of the Constitution, which provides that an election by the people shall be by secret, official ballot, has no application to primary elections, and a voter in such an election may be required to testify as to how he cast his vote. Glenn v. Gnau, 251 Ky. 3, 64 S. W. (2d) 168. However, this is not the only method of proving how the illegal vote was cast, and, if the challenged vote was cast openly, those in whose presence it was cast are competent witnesses. In Scholl v. Bell, 125 Ky. 750, 102 S. W. 248, 256, 31 Ky. Law Rep. 335, it was said:

"In order to deduct illegal votes from one party's vote, it must be shown that the votes were in fact cast and counted for such party. Duff v. Crawford [124 Ky. 73], 97 S. W. 1124, 30 Ky. Law Rep. [323], 324; Combs v. Combs, 97 S. W. 1127, 30 Ky. Law Rep. 161. But it may be shown for whom they were cast, by either direct or circumstantial evidence. Tunks v. Vincent, 106 Ky. 829, 51 S. W. 622 [21 Ky. Law Rep. 475].

"In the case of illegal votes cast by secret ballot, the voters alone can prove how the ballots were cast, and, as they are protected against such disclosure by the privilege against self-incrimination (Tunks v. Vincent, supra), it is practically impossible to show for whom secret illegal ballots were cast. Consequently they may be relied on to show the general uncertainty of an election, without proving for whom they were cast. Banks v. Sergent, supra [104 Ky. 843, 48 S. W. 149, 20 Ky. Law Rep. 1024]. As to illegal votes cast openly, the plaintiff may, and must, prove by the election officers for whom they were cast; and the only use that can be made of such illegal votes is to deduct them from the vote of the party for whom they were cast, when that fact is shown."

The court deducted 15 votes from appellant's total in Island Creek precinct 39 on the ground that they were cast openly, and that the voters had been bribed. Appellant contends that appellee failed to show for whom these votes were cast. We have carefully read the evidence bearing on these votes, and find that it shows conclusively all of them were cast openly and that 6 of the voters were bribed. It shows with reasonable certainty that these 15 votes were cast for appellant, but the evidence as to 10 of them is direct and positive. Even if the court erred in deducting the remaining 5 votes from appellant's total, the result would not be affected. A reading of the entire record discloses that the court refrained from deducting any vote from appellant concerning the legality of which there was any reasonable doubt, and it is not claimed that he should have deducted more than 42 votes from appellee.

Appellant in his brief refers to the evidence relative to the alleged violation of the Corrupt Practice Act by appellee, but he practically concedes that it was insufficient to show a violation of the act. George McCown

testified that appellee gave him $10 on Sunday before the election, and $10 on the following Wednesday, and that he used $8 of it to hire automobiles on election day, and that he gave E. Carroll $5 for the votes of himself and four members of his family for appellee. He admitted that appellee did not direct him to buy votes with the money, and knew nothing of the purchase of the Carroll votes. E. Carroll testified, and denied that McCown gave him any money for his vote or to influence the members of his family to vote for appellee. E. Carroll's wife and one of his daughters denied that they received any money from any one for their votes, and admitted that when they voted they used a sample ballot marked for a slate of candidates including appellant. Appellee admitted that he gave McCown $10, but claimed that he directed him to use it for the purpose of getting voters to the polls. The evidence was clearly insufficient to show a violation of the Corrupt Practice Act by appellee.

Appellant finally complains because the court overruled his exceptions to appellee's depositions. He insists they were not filed in time and that his exceptions should have been sustained. On August 23, 1937, an order was entered directing that the evidence be taken by depositions and the contestant was given up to and including the 8th day of September, 1937, within which to complete his evidence, and the contestee was given up to and including the 18th day of September, 1937, to complete his evidence, and the contestant was given up to and including the 20th day of September, 1937, within which to take his evidence in rebuttal. The contestant's evidence in chief was completed on or before September 8, 1937, and his evidence in rebuttal was completed on September 20, 1937, but the depositions were not filed until September 21, 1937. Section 1550-28 of the Kentucky Statutes, governing primary election contests, provides that ''the court may require the contestant, or the person who has the burden of proof under the issue joined, to complete his proof in not less than fifteen days after service of summons, and the contestee, or the persons not having the burden, to complete his proof in not less than ten days after filing of answer, and each party may be given one day additional for producing evidence in rebuttal and no greater time shall be extended, unless the court be satisfied that the ends of justice demand it.'' Neither the statute nor the order of the court required appellee to file his depositions on

or before September 8. He was merely required to complete his evidence in chief on or before that day, and this he did. There is no merit in the appellant's claim that the depositions were not filed in time.

In cases of this kind, the judgment of the circuit court is entitled to some weight, and, unless the finding of the circuit judge on a question of fact is against the weight of the evidence, it will not be disturbed. Salisbury v. Moore, 253 Ky. 744, 70 S. W. (2d) 529. In the instant case it is obvious that the circuit judge read the depositions with meticulous care, and deducted from appellant's total vote only such votes as the evidence clearly showed were cast illegally.

Perceiving no error in the judgment, it is affirmed.

Whole court sitting, except Chief Justice Ratliff.