## Baker v. Colson.

(Decided October 2, 1925.)

### Appeal from Clay Circuit Court.

1. Elections—Vote at Precinct Not Furnished with Booths Not Thrown Out, if Voters Stamped Ballots in Secrecy.—Primary vote at precinct not furnished with booths will not be thrown out, if voters stamped ballots in secrecy.

2. Elections—Contestant Without Standing, Unless Throwing Out Votes of Contested Precincts would Leave Him Majority of Legal Votes Cast.—Unless throwing out primary votes of precincts not furnished with booths would leave contestant majority of legal votes cast in precincts counted, he is without standing.

3. Elections—Circulation of False Reports by Contestee Held Properly Stricken as Grounds for Nomination Contest.—That contestee and friends of his, with his knowledge and consent, circulated false reports concerning himself and contestant held properly stricken from grounds of nomination contest as at most only usual electioneering tactics of candidates for office and consisting merely of reasons why contestee believed he should be preferred to contestant.

4. Elections—Contestee's Statement that if Elected, His Recommendation for Reappointment as Postmistress would have More Weight Held Not to Show Intimidation.—That contestee stated to postmistress that, if he were elected county attorney, his rec-

ommendation that she be reappointed would have much more weight held mere electioneering buncombe not ground for nomination contest as showing intimidation.

5.   Elections—Court's Finding that Contestee did Not Make Promises Testified to Not Disturbed on Appeal.—Trial court's finding that contestee did not promise money to witnesses so testifying, if they would work for and support him for nomination should be given considerable weight on appeal, and cannot be disturbed, where such witnesses were impeached by contestee's witnesses and by court's statement in his opinion as to his personal acquaintance with and knowledge of them.

JOHN M. QUINN for appellant.

ROY W. HOUSE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The parties to this litigation were rival candidates for the Republican nomination for the office of county attorney of Clay county at the 1925 primary election. The contestee and the appellee, D. Y. Colson, received in that election, as certified by the election officers and the county board of election commissioners, 2,050 votes and the contestant and appellant, Frank H. Baker, in like manner received 1.668 votes, giving to contestee a majority of 382 votes. In due time and in proper form contestant filed this proceeding in the Clay circuit court contesting the nomination of contestee upon six grounds. The response of contestee denied each and all of them and also relied upon a number of supposed illegalities by way of counter contests, which were controverted of record, and after the taking of proof and submission to the court it dismissed the contest proceedings, and to reverse that judgment contestant prosecutes this appeal.

The court sustained contestee's motion to strike from the notice of contest all of the grounds relied on but two, they being: (1) That contestee conspired with others to bribe voters and to wrongfully and unlawfully use money in the election, "and that he did furnish, and that he and his conspirators, who were his friends and workers for him with his knowledge and consent, did purchase and unlawfully spend a large amount of money on election day and thereby caused as many as 600 voters to cast their ballots for him when they would not have done so but for such corrupt practice," and (2) that at a num-

ber of named precincts there were no voting booths provided by the sheriff, or other person, to screen the voters while they were stamping their ballots, and that they were stamped on school desks provided for the purpose. The court sustained a demurrer to ground (2) because it was not alleged (a) that the voters did actually stamp their ballots in the open so as to be seen by the officers of the election and other persons legally present, or that such persons did actually see how the voters stamped their ballots, and (b) because it was nowhere alleged in that or any other paragraph that if the precincts referred to were disregarded (conceiving our authority to do so) the contestant received a majority of the legal votes cast at the other precincts of the county wherein the election was regularly conducted.

In the very recent case of Jones v. Steele, 210 Ky. 205, we held that, notwithstanding the officers failed to perform their directory duty by furnishing booths, the vote at such nonfurnished precinct would not be thrown out and not counted, if, in fact, the voters stamped their ballots *in secrecy* so that the fundamental purpose in providing for a secret ballot was accomplished. We think that case sustains reason (a) of the court in sustaining the demurrer; and we are clear that his reason (b) should be sustained. The proposition that, unless the throwing out of a precinct or precincts would leave a contestant with a majority of legal votes cast in the precincts that were counted the contestant would have no standing in a contest instituted by him is so manifestly true that we will consume neither time nor space in discussing it.

The grounds that the court struck from the notice were beyond question clearly immaterial. As an illustration we will refer to only one of them, which was that the contestee and some friends of his with his knowledge and consent, circulated false reports concerning contestant as well as concerning contestee himself, and they are set out, but at most they were only the usual and ordinary electioneering tactics of candidates for office and consist in nothing more than reasons why the circulating candidate believes that he should be preferred to his opponent. We, therefore, are clearly of the opinion that the court was right both in striking certain of the grounds from the notice and in sustaining the demurrer filed to the ground with reference to the absence of booths in certain voting precincts; which leaves only ground (1), to which the

court overruled a demurrer, for our consideration and determination.

In support of that ground contestant introduced some four, five or six witnesses, one or more of whom said that he was promised $1.00 by contestee if witness would work for and support him. About three other witnesses testified that at a certain voting precinct on the day when the litigants spoke there in the interest of their candidacy, the contestee offered them $10.00 each for their influence and support. It was proved by a postmistress at some post office in the county that contestee said to her that he would recommend her for reappointment after his election if he was successful, though it appears that he had already done so, but he stated at the time, in substance, that if he was elected county attorney his recommendation would have much more weight, and it is sought by such representation to charge contestee with intimidation; but we, like the court below, do not regard that incident (it being denied by contestee) even if true, as material to the merits of the case. At most it was only electioneering buncombe and cannot be given the effect contended for.

The witnesses who testified to the offers of bribery were impeached by a number of others introduced by contestee, and the court in rendering his opinion states his personal acquaintance with and knowledge of them, which itself was very impeaching. The contestee denied any such promises, and the court found as a fact that they never happened. Necessarily the finding of the fact made by the trial court should be given considerable weight by us on appeal. It is not incumbent upon us in this opinion to adjudge the precise rule that we should employ and adopt in such contest proceedings as to measuring the accuracy of the court's findings of facts. It is sufficient only for us to state here that under no rule to which we have been cited, or which we have been able to find, are we authorized to disturb the court's findings upon those issues.

It will readily be seen that the broad statements of this ground of contest, i. e., that vast sums of money were expended and 600 voters thereby corrupted, were entirely unproved. However, if contestee was guilty of the conduct that the witnesses of contestant attributed to him, he should, under the provisions of our Corrupt Practice Act, be deprived of his nomination; but having

concluded with the court below that the testimony fails to prove any such attempt at corruption, there is nothing left upon which to sustain the contest.

Wherefore, the judgment is affirmed.