## Napier v. McIntosh.

(Decided June 14, 1927.)

### Appeal from Perry Circuit Court.

1. Depositions.—Deposition of witness in election contest, taken in absence of defendant and his attorneys, should have been stricken.
2. Elections.—A person who has been elected to office by decisive majority should not be deprived of his office under the Corrupt Practice Act (Ky. Stats., section 1565b-1 et seq.), unless facts are established fairly warranting the conclusion that provisions of the act were violated by him or by others with his knowledge or authority.
3. Elections.—Evidence in election contest held insufficient to show violation of the Corrupt Practice Act (Ky. Stats., section 1565b-1 et seq.) by party receiving decisive majority.

H. C. FAULKNER, W. E. FAULKNER, T. E. MOORE, JR., and C. W. NAPIER for appellant.

H. C. EVERSOLE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

The appellant, Price Napier, and the appellee, Mrs. Filmore McIntosh, were opposing candidates for the office of jailer of Perry county at the election held on November 5, 1925. Napier was a candidate on the Republican ticket and Mrs. McIntosh was an Independent candidate. Napier received 4,504 votes and Mrs. McIntosh 3,426 votes.

Mrs. McIntosh filed this contest, charging that Napier had violated the Corrupt Practice Act (Ky. Stats., section 1565b-1 et seq.). She charged in substance that Napier and the other candidates on the Republican ticket formed an organization for the purpose of promoting their joint interests in the election, and that each of them contributed from $500 to $1,000 to a fund to be used in the election to influence voters to vote

the Republican ticket, that this fund amounted to $6,000, and was distributed among various workers to be used throughout the county on the day of the election, and that it was used to influence voters to vote the Republican ticket. The evidence introduced by her in chief was substantially as follows:

F. A. Johnson, who was a candidate for the office of tax commissioner on the Republican ticket, and one of those charged with being a member of the organization, and with making a contribution for the purpose of influencing voters to vote the Republican ticket, testified that he was present at one meeting in which all of the candidates agreed to put in $15 each for the purpose of meeting campaign expenses; that Napier put in $15, and paid it to Henry Johnson, who was chairman of the organization, and that this was the only amount he ever saw Napier give. He was asked this question:

"State if it is not a fact in your knowledge that Price Napier, John E. Campbell, Wm. Cornett, E. O. Duff, and Ella Campbell Hopkins contributed from $500 to $1,000 each, and pooled the same, to be sent out to the various precincts in Perry county, to be spent to influence voters to vote for each of them at the November election, 1925. A. They may have; but, if they did, I didn't see any of the money that was contributed to that organization, except what I have told you heretofore."

The appellee not being satisfied with his answer to this question, it was certified to the circuit court. On October 2, 1926, nearly a year thereafter, he was brought before the circuit court, and the judge read to him the above question and he answered as follows: "Yes, sir; they did." Appellant's attorneys asked permission to cross-examine the witness and the court refused to grant them this permission, but two weeks later, when the case was ready for submission and was being argued, the court informed the attorneys for appellant that they might bring the witness F. A. Johnson into court and cross-examine him relative to the matters contained in the question that had been propounded to him in open court on October 2, 1926. They declined to avail themselves of this privilege, but asked to be permitted to introduce evidence in rebuttal, which the court refused to permit them to do. They made no avowal as to what they could prove.

Henry Johnson acted as chairman of the Republican organization until about 10 days before the election. He was introduced as a witness by appellee, and testified that the candidates agreed at one meeting to contribute $15 each toward expenses, and that at another meeting they agreed to contribute $50 each toward such expenses; that this was the only money contributed by the candidates so far as he knew, and what was left in his hands when he ceased to act as chairman, he turned over to his successor, W. A. Stanfill; the amount turned over being approximately $200.

W. A. Stanfill testified that Price Napier contributed either $40.00 or $50.00, to be used for advertising and other general expenses of that nature, and that this money was so used. He was finally asked this question:

"Q. State whether or not, just prior to November election, 1925, you delivered to Bob Fields $100 more or less, to W. B. Napier $100 more or less, to be used in precinct No. 29, Krypton; Irvine Napier $100 more or less, to be used in Chavies, No. 19; Ira Duff $100 more or less, to be used in Campbell, No. 2, in said election; Elijah McIntosh $100 more or less, to be used in precinct No. 6 in said election; John McIntosh $100 more or less, to be used in First Creek, No. 20, to be used in said election; Chester Duff $100 more or less, to be used in precinct No. 36, Hazard, Ky.; Zack Duff $100 more or less, to be used in Vicco precinct, No. 31, to be used in said election; and if you delivered either of those parties, or any one of them, this amount of money, whether or not the defendant had any interest therein, and for what purpose it was to be used and for whose benefit? A. I decline to answer that question."

This question was certified to the circuit court, and on October 2, 1926, this question being read to him by the judge, he answered it as follows:

"A. Just prior to the November election I delivered to Bob Fields a sum of money, which may have been $100; I don't remember the amount. I did not deliver any money to W. B. Napier. I did deliver a sum of money to Irvine Napier, and it was possibly $100; I don't remember the exact amount. I understood that he was going to Chavies, or some-

where in that vicinity. I have no recollection whatever, and am pretty sure that I did not deliver any money to Ira Duff, to be used in Campbell precinct, No. 20, or anywhere. I am also pretty sure that I did not deliver any money to Elijah McIntosh, to be used in First Creek precinct, No. 20. If I delivered any money to Chester Duff, to be used in precinct 36, at Hazard, or anywhere else, I have no recollection of it, and I don't think I did. I did deliver to Zach Duff some sum of money—my recollection is a little more than $100—and I understand that he was going to Vicco precinct, or somewhere on Carrs Fork. I gave no instructions to any of these parties about the money, and Price Napier did not, so far as I have any knowledge, have any interest in any part of that money. As to what purpose it was to be used for, I had nothing to say; and as to whose benefit it was to be used, I had nothing to say.''

Joe Campbell stated that he was at Hardburley precinct in Perry county on the day of the election in November, 1925, as a worker in the interest of the Republican ticket; that Sam Cornett was also present at this precinct in the interest of the Republican ticket. Being asked whether or not he saw Sam Cornett with any money there on that day, and about what amount, if he knew, he answered:

''I do not want to tell anything that will incriminate myself, as I have been informed, that under the law it is a fine for a man to use money in the election.''

Appellant's counsel then stated to the witness that his information upon that subject was correct, and that if an answer to this question, or any other question that might thereafter be asked him, might tend in any way to incriminate himself, he might decline to answer it for that reason, and might give that as a reason for so declining. He was later asked this question:

''State whether or not you saw Sam Cornett there, around the election ground, distributing or give to any person any sum of money, and how many different times did you see him give money to individuals there, and who they were, if you know?''

The following objection was made to this question:

"Defendant objects to the question, and excepts to any answer, because it is incompetent, there being no charges of bribery of voters left in.the plaintiff's petition, as same was stricken therefrom by an order of court in this case, and Sam Cornett not being named in the plaintiff's petition as having bribed, given, or loaned any money to any person whatever in that election."

The witness then answered:

"I decline to answer the question."

Counsel for the contestant averred that witness could and would answer the question, giving the names of individuals to whom he saw Sam Cornett give money as propounded in this question, and asked that he be cited before the trial judge to answer the question. The above question, however, was not certified.

Z. T. Duff testified that he is the son of E. C. Duff, candidate for county judge on the Republican ticket, and he was asked whether or not William Stanfill at any time before the day of the November election, 1925, gave him any sum of money, and, if he did, how much, and for what purpose. The following objection was noted to this question:

"Defendant objects to this question, and any answer thereto, because it is incompetent and irrelevant, and because calling for an answer about a transaction in which he had nothing to do, and by which he could not be bound, and further counsel advises the witness, if an answer to this question would tend to incriminate himself, he may decline to answer for that reason only. Counsel for the plaintiff advises that the objection is not well taken, because the statute under which this proceeding is had exonerates a witness or the use of any testimony against him in any criminal or civil procedure."

The witness answered the question as follows:

"He gave me some money; I do not remember how much there was of it; and he didn't instruct me at the time as to what I should do with it. He gave me approximately $150, and told me to use it to my own satisfaction."

The witness further testified that he spent about $20 of the money on the day of the election for cakes, pies, and ginger bread, and that this was all he spent but that he returned no part of it to Wm. Stanfill.

Miller Cornett, who is a half-brother of John E. Campbell, Republican candidate for county attorney, testified that it was his understanding that Bill Cornett was to put up $1,500, John Campbell $1,000, Farmer Johnson $500, Ella Hopkins $500, Price Napier $1,000, and Judge Duff $1,000 for the expenses of the election.

Vince York testified that on the day of the election he was at precinct No. 25, in Hazard, working for the Independent ticket; that he saw Price Napier and a man by the name of Adkins go under a barn near the place where the election was being held; that he saw some negroes go into this barn and come out later with money in their hands. One of them had a piece of paper in his hand, with some names written on it. He saw the names of Price Napier, Cash Eversole, and W. L. Cornett. He said he saw Price Napier with money on that day, but did not see him give it to anybody.

The appellant introduced a number of witnesses, who testified that Vince York's reputation for truth and veracity was bad.

John McIntosh testified that he was a worker for the Republican ticket and he was asked this question:

"State whether or not, after that meeting that you called, and after the nomination of E. C. Duff, Wm. Stanfill gave you any money, and about how much money, and for what purpose."

The appellant's counsel advised the witness that, if the answer to the question tends in any way to incriminate himself, he might for that reason decline to answer it. The appellee's counsel advised the witness that, under the statute under which this action was brought, no statement he might make could be used against him in any criminal prosecution or civil procedure. Appellant's counsel then advised the witness that the appellee's attorney had instructed him erroneously. The witness then declined to answer the question. He was then asked a number of questions relative to money being given to him to be spent on the day of the election in the interest of the Republican ticket, and for the purpose of influencing voters to vote the Republican ticket, and appellant's counsel in each instance advised him that, if the answer

to the question might tend in any way to incriminate him, he might for that reason decline to answer, and the witness declined to answer each of these questions.

Herbert Amis testified that Price Napier gave him $15 before the election; but, when asked what Napier told him to do with it, he declined to answer. The deposition of this witness, however, was taken in the absence of the appellant and his attorneys, and should have been stricken. Furthermore, the character of this witness was successfully impeached.

F. A. Johnson, as shown above, testified that Napier put in $15, and that this was the only amount he ever saw Napier give. When brought before the court and asked the question whether each of the candidates had put up $1,000, he answered: "Yes, sir; they did." But this answer must be read in connection with his deposition, and must mean that the $15 is all that he personally knew about. For this reason, perhaps, the circuit court refused to allow Napier's attorneys to cross-examine the witnesses. The witness had definitely stated what he knew, and we cannot assume that he meant in his answer to the judge to contradict his own deposition. Should the court hold otherwise, plainly the judgment below is erroneous, in not giving Napier an opportunity to cross-examine the witness, or to take further testimony. In fact, the matter was not brought before the circuit judge for nearly a year, and the long delay may have inclined the circuit court to follow the course he pursued.

In view of the other evidence in the case by other witnesses, and Napier's own positive testimony that he put up no money, Napier should not be deprived of his office on such an uncertain statement as this. The testimony of Miller Cornett that it was his understanding that the candidates had each put up a certain amount of money for the expenses of the election was wholly incompetent, as he stated no facts showing any knowledge on his part. No other witness testified to anything showing the use by Napier of money on the election, except Vince York, who said that he saw Napier and a man by the name of Atkins go under a barn near the place where the election was held, and he saw some negroes go into this barn and come out later with money in their hands. But he is contradicted by other witnesses, and he does not state that Napier was then in the barn, or state any facts showing

from whom or for what the negroes got the money, or how much they got.

While there is evidence that certain persons used money in that election, there is nothing connecting Napier with such use of money. These persons decline to answer the questions, on the ground that their answers might incriminate them. As this was a proceeding under the Corrupt Practice Act, this was no reason why they should not have answered the questions, and, whatever presumption may arise against them from their failure to answer the questions, this cannot affect Napier, as there is nothing to show that they were acting by his authority or for him.

Elections should not be lightly set aside. A man who has been elected to office by a decisive majority should not be deprived of his office under the Corrupt Practice Act, unless facts are established fairly warranting the conclusion that the provisions of the act were violated by him, or by others with his knowledge or authority. On the whole case, the court concludes that there is not sufficient evidence here of the violation of the Corrupt Practice Act by Napier.

Judgment reversed, and cause remanded for a judgment as above indicated. Whole court sitting.