## Baker v. Gross.

## Begley v. Same.

(Decided October 15, 1929.)

A. F. BYRD, WOOTTON & WOOTTON and D. G. BOLEYN for appellant Baker.

W. C. EVERSOLE and CLARENCE NOBLE for Holliday.

W. A. STANFILL, JESSE MORGAN and J. T. BOWLING for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

At the primary election held on August 3, the vote, as counted by the election officers, for the Republican nomination for sheriff of Perry county was as follows: For A. M. Gross, 2,313 votes; for Tolbert Holliday, 1,763 votes; for Justus Begley, 1,752 votes; for Billie Baker, 1,738 votes. On the contest of the election, the vote was recounted by the circuit court, and on the recount stood as follows: For Gross, 2,300 votes; for Baker, 1,770 votes; Holliday, 1,768 votes; Begley, 1,759 votes. Viola-

tions of the Corrupt Practice Act (Ky. Stats., sec. 1565b1 et seq.) were charged and voluminous proof was taken. On the final hearing the circuit court reviewed carefully all the evidence, and adjudged Gross entitled to the nomination. These appeals followed.

The only question made on this appeal is the violation of the Corrupt Practice Act by Gross. It is a well-settled rule of this court in such cases to give some weight to the finding of the circuit court and not to disturb it on doubtful evidence. In Douglas v. Greene, decided October 11, 1929, 20 S. W. (2d) ——, the court, refusing to set aside the election on this ground, thus stated the rule:

"It is true that we have held that the knowledge called for by the Corrupt Practice Act may be established by circumstantial evidence, Charles v. Flanary, 192 Ky. 511, 233 S. W. 904; but the evidence should do more than merely raise a suspicion, even though the suspicion be strong, that the candidate knew of such violations. Napier v. McIntosh, 220 Ky. 539, 295 S. W. 856; Duff v. Salyers, 220 Ky. 546, 295 S. W. 871; Burchell v. Hubbard, 218 Ky. 344, 291 S. W. 751. The facts of this case are no stronger than those in the Napier and Duff cases, supra, where we held that 'knowledge' on the part of the successful candidates of violations of the Corrupt Practice Act by their workers had not been established. It is well known that in many elections supporters of candidates go to extreme lengths to elect their candidates and do many things which the candidates themselves would not have . . . countenanced had they known of them. Especially is this true where there is a factional fight in the political party of the candidate as this record strongly indicates was the fact here. While it may seem strange that the appellee did not know of the raising of the campaign fund by his brothers, and while all the circumstances we have detailed, especially that of the appellee referring Sebastian to Duff, may raise a very strong suspicion of appellee's knowledge of what was going on, yet, when all this taken in the light of the sworn testimony of appellee and of all these workers, to the effect that appellee knew nothing of their violations in his behalf of the Corrupt Practice Act, we are constrained to hold that the cir-

cumstances relied upon by the appellant fall short of the proof of that knowledge necessary to deprive the appellee of the certificate of nomination awarded him. This being so, the judgment of the lower court is affirmed. The whole court sitting."

The proof in this case is not as strong as the proof in that case. Appellee in his expense accounts reported that he had spent $576. It is earnestly insisted that some of these items are unwarranted, but appellee testified that all the money was paid out to persons, who were for him, simply to pay them for their time in putting up his cards and doing other like work for him to get out the vote. The amounts paid in each case are no more than reasonable for such services, and the total amount is little more than half the amount the candidate is allowed by the statute to spend for such purposes.

Appellant showed by several witnesses that appellee himself had given three or four persons money for corrupt purposes, but these witnesses are impeached. Appellee swears that no such transactions took place, and proved by several witnesses that he was elsewhere at the times referred to. The chief reliance on the appeal is the conduct of appellee's wife, his two sons Coburn and Paul, his brother John Gross, and his brother-in-law Dennis Sexton. Appellee is a physician who has lived many years in Hazard. On the night before the election, it was arranged between him and members of his family that each one would go to a certain precinct the next day, but they all testify that he gave them no money and knew nothing of any money to be used, and they all testify in substance, that they used no money. To take up all these precincts would unduly extend this opinion. The precinct most relied on is Town Mountain, where Mrs. Gross was. Appellants introduced a number of witnesses who testified that Mrs. Gross was there, and that Pole Fields would go to her from time to time and get money and then go out and buy votes with it. On the other hand, Pole Fields swears that he got no money from Mrs. Gross and bought no votes. His testimony is confirmed by the testimony of others whose votes it is alleged he bought. Mrs. Gross cannot testify for her husband, but she proved by a number of her friends, who were with her there that day pretty constantly, that nothing of this sort occurred, and that she had no money there and gave out none, except a treat about noon to her

friends who were working for her husband. The proof as to the other members of the family in the other precincts is practically the same. There is no showing that Dr. Gross put out any money in the hands of his friends or members of his family or that it was with his knowledge or consent that any money was spent. There were a number of candidates at that election, and some of them had put out money. Some of these people who had this money used it to get votes also for Dr. Gross as they were for him for sheriff, but there is no showing that any of them acted with his knowledge or consent.

On the whole case, the court is clearly of the opinion that the judgment of the circuit court cannot be disturbed on the facts.

Judgment affirmed.