## Howard v. Parsons.

(Decided March 11, 1932.)

MARTIN T. KELLY and TAYLOR & TAYLOR for appellant.

N. R. PATTERSON and H. H. FUSON for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

L. T. Howard, N. P. Parsons, and W. H. Jackson were candidates for the position of member of the school board in district No. 3 of Bell county at the November election, 1931. Howard received 401 votes; Parsons 508; and Jackson 199. Howard and Jackson filed contests. The ground of contest was violation of the Corrupt Practice Act (Ky. Stats., sec. 1565b-1 et seq.) by Parsons and by his friends with his consent. By consent of parties, the proof was heard orally in court. The court dismissed the contests, and Howard appeals.

Only a question of fact is presented by the appeal, which is this: Did Parsons, under the proof, violate the Corrupt Practice Act? The evidence on the trial, briefly stated, was as follows:

A. R. Robinson and his wife testified that on the day before the election Parsons stopped in his car in front of their house; Mrs. Robinson was on the porch; Parsons handed her $2 and told her to help him out in the election. Parsons says he was not there, and none of this occurred. He impeached Robinson and wife by several witnesses, and no proof of good character was offered.

Nancy Slusher testified that she was seventy-five years old and paralyzed; that Parsons wanted her to do all she could for him; this was the week before the election, and he offered to send a car for her to vote for him. As he left, she asked him for five cents to get some tobacco. He says he had no other change, and gave her a quarter and some chewing tobacco.

Lucile Glancey says Parsons gave her fifty cents and told her to buy candy to set the girls up and to come out and vote for him. Debbie Slusher and two or three other girls were there. Debbie was sixteen years old. Parsons says a crowd of girls from eight to sixteen asked for a treat, and he gave fifty cents to Debbie to treat the crowd. This was some time before the election.

On Thursday morning before the election Parsons came out of his house and got in his car to take his daughter to school. Abe Jackson was there talking to him; said he was for Parsons. Old man Keys walked by. Parsons left in his car, and Jackson rode in the back seat. He afterwards found $2 in his pocket; he says he

does not know how it got there. Parsons says he knew nothing of it.

Joe Howard says Parsons gave him $10 to spend for him; told him Hoskins would have plenty more. Saylor had his whisky, and he would get Howard to handle it too. He had 1½ gallons. He bought nine votes; sent seven or eight to Hoskins. Parsons says he did not see him or give him anything. He was against him all the time, and he proves that Joe Howard was for appellant all the time and working for him by four or five unimpeached witnesses.

Almeda Hoskins says Parsons asked her how much it would take to buy Mrs. Sizemore to vote for him, and she said she would have nothing to do with that. He says this did not occur; that Mrs. Sizemore was for him all the time.

Newt North says he asked Parsons what he was trading for election; that Parsons got twenty-four pounds of flour in the store and gave it to him. This was seven or eight days before the election, and Parsons told him to remember him on the day of the election. Some days after this he went with Parsons in his car to a speaking, and, after he got to the speaking, he found $2 in his left coat pocket. He did not know how it got there. This was Thursday or Friday before the election. Elmer North says he was present when Newt North got the flour. Parsons says that none of this occurred. The Norths were not good citizens.

Dan Griffith says that two or three days before the election Parsons gave him $8 to buy votes for him. He gave his mother, sister, and wife each $2, and kept $2 for himself. He also says Cammie Wilson gave him $3; he spent $2. His mother and sister say each got $2. Parsons and Wilson deny this. They impeach Dan Griffith by two or more witnesses.

Lonzo Green says that two weeks before the election Charlie Hoskins gave him $5 to spend for Parsons. Hoskins denies this or that he used any money or had any from Parsons. Green also says that Parsons talked like he would give him a job driving the school bus, but he does not tell what Parsons said.

W. H. Jackson says he saw Parsons talking to two negroes behind the schoolhouse. Parsons saw him looking, and put his hand down. George Golden also testifies that before they went behind the house the negroes

wanted pay for their vote. Parsons says he was explaining to the negroes that they should go to another precinct to vote, and that this was all of it.

Morris Taylor, son of Nelson Taylor, says Sol Simpson had him pay Nelse Johnson and Sam Johnson $2 each; also gave twelve orders in the store, each for $2 paid in merchandise. Simpson denies this, and says he had no money and gave no orders. Parsons says he gave Simpson no money and knew nothing of this. Nelson Taylor was for Howard. Sol Simpson was a contractor who gave his men orders regularly.

Bertie Burchfield says Henry Taylor on the day of the election gave him $1 to work for Parsons, and before this Parsons said he would have a man there working for him. Taylor says he was not there; had no money.

Henry Eley says he saw A. B. Hoskins hauling voters for Parsons, and Marvin Miller says the same, also Lawrence Rice and Charlie Miller told this, and say there were groceries in the car when it came up with voters, and that it made frequent trips. Rice says Hoskins paid him $2 to vote for Parsons. He did not vote; he had been in the penitentiary for two years. Eley had been convicted of perjury. Hoskins says he used his car of his own accord because he was a friend of Parsons and got nothing for this and used no money.

Nelson Johnson and Sam Johnson say Morris Taylor paid Nelson $2 in stuff for voting for Parsons. Morris Taylor says he did this at the order of Sol Simpson. Simpson denies this or having any of Parsons' money.

Daley Slusher went to Parsons' store to buy a pair of shoes on credit. Parsons told him he was not selling on credit, and gave him $1 to go toward getting some shoes. Parsons says this was a charity; that Slusher's shoes were worn out, and his feet were practically on the ground. This was some days before the election.

Appellant earnestly urges that J. S. Telton, the jailer of the county and former sheriff, J. M. Percival, the county court clerk, Cammie Wilson, former school superintendent, and William Hays, a real estate agent at Pineville, were an inner circle, who used their influence and put up money for the election of Parsons, with his consent; but each of these men testify that they used no money and advised Parsons to use none; that the people were for him. They all admit that they did use

their influence for Parsons and worked for him in the election, but they deny that any money was used. Parsons' sworn statement of his expenses showed that he spent $25 in his canvass, $5 of which was used for car hire and the other $20 for advertising. The testimony of these witnesses is clear and without equivocation. It stands uncontradicted, except by the proof above stated.

In Napier v. McIntosh, 220 Ky. 539, 295 S. W. 856, 859, the court thus stated the rule:

> "Elections should not be lightly set aside. A man who has been elected to office by a decisive majority should not be deprived of his office under the Corrupt Practice Act, unless facts are established fairly warranting the conclusion that the provisions of the act were violated by him, or by others with his knowledge or authority."

Again in Duff v. Salyers, 220 Ky. 547, 295 S. W. 871, 872, the court said:

> "The choice of the people at an election may not be lightly set aside. Guilt under the Corrupt Practice Act must be proved by competent evidence. It may be shown by circumstantial evidence, but, to be sufficient for this purpose, the inference from the circumstances must be sufficiently certain to satisfy the ordinary judgment."

To the same effect see Marilla v. Ratterman, 209 Ky. 420, 273 S. W. 69; Burchell v. Hubbard, 218 Ky. 344, 291 S. W. 751, and cases cited.

In such cases "necessarily the finding of the fact made by the trial court should be given considerable weight by us on appeal." Baker v. Colson, 210 Ky. 277, 275 S. W. 879, 881. In this case the witnesses were heard in open court, and the rule is especially applied where the judge sees and hears the witnesses. On all the facts, the judgment of the circuit court cannot be disturbed. The case turns on the credibility of the witnesses.

Judgment affirmed.