## Wheeler v. Marshall.

Oct. 13, 1939.

John J. Winn for appellant.

Charles D. Grubbs and H. Reid Prewitt for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER— Affirming.

J. W. Wheeler, Joe Sorrell, F. P. Boyd and Mrs. W. G. Marshall were candidates for membership on the Montgomery County Board of Education at the November election in 1938. Mrs. Marshall received 1,153 votes; Boyd 1,135; Wheeler 1,106 and Sorrell 1,066. Wheeler filed a contest against Mrs. Marshall alleging in his petition a violation of the Corrupt Practice Act, Section 1565-1 et seq., Kentucky Statutes, and sought to have her disqualified but did not ask that he be declared elected. The regular judge disqualified himself and Hon. Robert R. Friend being designated by the Chief Justice as special judge to try the action, found in favor of Mrs. Marshall and entered judgment dismissing the petition.

The two questions presented by this appeal are that the court erred: 1, In granting an extension of 30 days to Mrs. Marshall to complete the taking of her proof beyond the 50 days provided by Section 1596a-12, Kentucky Statutes; 2, in finding Mrs. Marshall had not violated the Corrupt Practice Act.

After Wheeler completed taking his depositions, Mrs. Marshall took hers on three days, to-wit: February 10, February 27, and March 4, 1939. Wheeler does not contend that Mrs. Marshall's first taking on February 10th was not within the time fixed by the statutes; and his exceptions to her depositions and motion to strike same from the record are pressed only against her second and third takings. In the first depositions taken by Mrs. Marshall she practically completed her proof, and the last two takings (which were after statutory time had expired and were during the 30 days extension granted by the trial judge) were confined to an attempt to impeach Mrs. Neville Covey and Mrs. Ida Oldham, two witnesses who testified for Wheeler. From a consideration alone of the testimony which appellant admits was taken in time, and without giving any consideration to the depositions he insists should be stricken

from the record, we have reached the conclusion the trial judge correctly held Mrs. Marshall was not guilty of corrupt practice. Therefore, it is unnecessary for us to pass upon the question of whether or not the trial judge erred in granting a 30 day extension of time to Mrs. Marshall within which to complete the taking of her proof, and whether or not these depositions should be stricken from the record.

Mrs. Marshall had been a school teacher and later was elected county school superintendent by the Montgomery County Board of Education and served for five years. Reid Prewitt and several other persons were against the policies of the present county school superintendent, Mrs. McNamara, and they were in search of candidates for the County Board of Education who would not be in accord with Mrs. McNamara's policies, and they agreed upon Mr. Boyd and Mrs. Marshall. Mrs. Marshall was not interested in making the race, yet she consented to the importunities of Prewitt and other friends. She testified this was her first experience in seeking office by popular vote and that she was a novice in politics; that Reid Prewitt was not her campaign manager and had no connection with her campaign; that she attended several meetings in his office before the election, but at none of these meetings was the use of money or any other corrupt practices discussed; that she ran her own race, without making any alliances, on a platform she, herself, wrote. Reid Prewitt and others who attended the meetings in his office testified the subject of money was not mentioned at any of these meetings, nor was any fraudulent practices of any kind discussed, and that these were merely "pep" meetings.

At the same November election there were Democratic candidates for the office of United States Senator and for Congress. Many of the witnesses called for Wheeler were friends and supporters of Mrs. Marshall and they boldly admitted they bribed more than one man and woman to cast their ballots for Mrs. Marshall, Boyd and the Democratic candidates for federal offices. W. B. White, the Democratic County Chairman, testified that so far as he knew there was no money spent in the election in behalf of candidates for the United States Senate and for Congress. But Crawford Mason testified he was interested in Jim Green obtaining a federal political appointment and that he contributed $200 to Reid

Prewitt to be used for the benefit of the Democratic Party in the November election. Shirley Mason also made a sizable contribution to Prewitt as he was interested in Jim Green obtaining this appointment. There is some evidence that Floyd Mills and his wife, a sister of Mrs. Marshall, used money in her behalf, but they stated Mrs. Marshall knew nothing about this fact. Mrs. Marshall states she had no knowledge or information that money was being used by anyone in her behalf.

While we condemn such practices as being most reprehensible on the part of the ones bribing their less affluent fellow citizens, yet we cannot charge Mrs. Marshall with knowledge of their action. We have written that knowledge of such misconduct may be inferred from circumstances, but the candidate is not liable for improper actions on the part of supporters and relatives in the absence of a showing such fraudulent actions were authorized or ratified upon the part of the candidate. Prewitt v. Caudill, 250 Ky. 698, 63 S. W. (2d) 954; Lewis v. Sizemore, 274 Ky. 58, 118 S. W. (2d) 133.

Mrs. Marshall denied all knowledge that money was being used in her behalf and none of the witnesses, who admitted they expended money for her benefit on the day of the election, testified they ever discussed with her the use of money, or that she had any knowledge or information that money was expended for her corruptly. We find in this record no circumstances from which knowledge of the misconduct of her supporters may be inferred to Mrs. Marshall, and we wrote in Prewitt v. Caudill, supra, that the corrupt act of election workers cannot be imputed to the candidate from the mere act itself.

There are several instances wherein testimony was introduced in an attempt to connect Mrs. Marshall directly with bribery. Mrs. Neville Covey and Mrs. Oldham testified that Dave ''Froggy'' Resiner, a blind man, came to the Jeffersonville or Ticktown precinct, in an inebriated condition and he called out, and Mrs. Oldham went to him and said, ''Here I am, Dave,'' and Mrs. Marshall said, ''Froggy, I am here, come and vote with us. We have the biggest pile and are paying $4.50 today.'' The record does not show that ''Froggy'' was paid anything, but it shows he went with Mrs. Oldham to the election officers and voted on the table. ''Froggy'' did not testify, and Mrs. Marshall denied that she called

him "Froggy" or offered him any money. We are inclined to accept Mrs. Marshall's testimony as being true, as it is difficult to believe she would seriously call out in public and offer a man a sum of money to vote for her.

Robert Spears testified Mrs. Marshall asked him to vote for her and put $3 in his pocket in front of the school house door in Ticktown. Mrs. Marshall denied this and testified she did not even see Spears on election day. Spears was impeached. If we were inclined to accept his unusual story against the denial of Mrs. Marshall, which is not the case, we could not do so in the face of the strong impeaching testimony. We call attention that the witnesses who impeached Spears and those who impeached Richards, to whom we refer in the following paragraph, all testified on the first taking of depositions by Mrs. Marshall and their testimony is not included in the depositions appellant insists should be stricken from the record.

S. B. Richards testified that three or four days before the election Mrs. Marshall met him on Main Street in Mount Sterling, asked him to work for her in the Side View precinct and gave him $10. On cross examination he testified he had known Mrs. Marshall since 1916, while her testimony is that she did not come to Montgomery County until 1923. Mrs. Marshall testified she had no personal acquaintance with Richards, and denied she met him on the street or had any conversation with him or gave him any money. She knew he was a tenant on the farm of Eubank, who was actively supporting both Wheeler and Sorrell, and it is most unreasonable to believe she would stop Richards on Main Street in Mount Sterling and after engaging him in conversation would then and there, just three or four days before the election, count out $10 to him. We say of Richard's testimony, as we said of Spears, it would be difficult for us to accept it even though he had not been impeached.

Mrs. Neville Covey testified that Fletcher "Potsy" Richardson drove up to the polls with three women in his car and Mrs. Marshall went to the car and talked to them. After so doing, Mrs. Willoughby went to the corner of the school house facing the road and Mrs. Marshall took money out of her pocket, handed it to Mrs. Willoughby, who carried the money to the car,

climbed on the running-board and when she stepped down the money had disappeared. Mrs. Ida Oldham also testified of seeing Mrs. Willoughby take some money in her hand to a car and give it to some women. Mrs. Carrie McFarland, one of the three women in the car testified that Mrs. Marshall asked for her vote, saying, "You will be seen to directly." Soon thereafter Marion Martin did come to the car, but upon cross-examination Mrs. McFarland testified that Martin gave her no money and that she did not sell her vote. Mrs. Covey and Mrs. Oldham were flatly contradicted by Mrs. Marshall, Mrs. Willoughby and "Potsy." Mrs. Marshall testified she went to the polls with $8 consisting of a five dollar bill and three one dollar bills, that she gave Mrs. Willoughby a dollar to buy gas for Ammon Cooper's car and that she gave Bill McCoy a dollar to buy gas for his car (these two men were hauling voters for her), and she went home with $6. Mrs. Oldham testified she saw Mrs. Marshall count out some money to Bill Anderson. Mrs. Marshall denied she gave Anderson any money and she is corroborated by Eddie Trimble, who testified he took Bill Anderson from Levee to Ticktown and he and Bill borrowed money from Bergin Trimble, a brother of Eddie; that Mrs. Marshall was not present during this transaction.

The testimony of Mrs. Covey and Mrs. Oldham is in direct conflict with that of Mrs. Marshall and Mrs. Willoughby and these latter are supported in certain parts of their testimony by "Potsy" and Trimble. In election contest cases the findings of fact by the trial judge are entitled to some weight, and will not be set aside by this court unless they are against the weight of the evidence. Howard v. Parsons, 242 Ky. 704, 47 S. W. (2d) 545; Runyon v. Trent, 270 Ky. 134, 109 S. W. (2d) 396. We cannot say in this instance that the findings of the trial judge are against the weight of the evidence and we refuse to set them aside and convict Mrs. Marshall of corrupt practices and deprive her of the office to which she was elected.

It is hardly necessary to cite authority that elections should not be set aside unless facts are proven fairly warranting the conclusion the Corrupt Practice Act was violated by the candidate, or by others with his knowledge or sanction. We content ourselves with citing only two of the late cases. Lewis v. Sizemore, 274 Ky. 58, 118 S. W. (2d) 133; Gross v. Cawood, 270 Ky.

264, 109 S. W. (2d) 597. There is no doubt that the Corrupt Practice Act was violated by the supporters and workers for Mrs. Marshall, but this record fails to bring home to her that such practices were resorted to with her knowledge and consent or with her authority and approval.

Judgment affirmed.